UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SAMUEL TURK SOMMERS,

      Petitioner,

v.                      Case No: 2:12-cv-645-FtM-29DNF

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Samuel Turk Sommers ("Petitioner") who is presently confined at the Union Correctional Center in Raiford, Florida (Doc. 1, filed Dec. 3, 2012). Petitioner, proceeding *pro se*, attacks a conviction entered by the Twentieth Judicial Circuit Court in Collier County, Florida for trafficking in illegal drugs. Id. Respondent filed a response to the petition, and Petitioner filed a reply (Doc. 11; Doc. 20).

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Upon due consideration of the pleadings and the state-court record, the Court concludes that Petitioner is not entitled to federal habeas relief.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.   **Background and Procedural History**

On May 14, 2008, Petitioner was charged by third amended information with one count of trafficking in 14 grams or more of illegal drugs in violation of Florida Statute § 893.135(1)(c) (count one) and one count of trafficking in 28 grams or more of illegal drugs in violation of Florida Statute § 893.135(1)(c) (count two) (Ex. 1A at 71).[2]  Count one involved activity that occurred on August 17, 2006, and count two involved activity that occurred on October 11, 2006.  Id.

Prior to trial, Petitioner wrote several letters to the trial court in which he expressed dissatisfaction with his court appointed defense attorney.  On June 20, 2007, Petitioner

---

[2] Unless otherwise indicated, citations to appendices are to those filed by Respondent on October 1, 2013 (Doc. 21).  Citations to exhibits are to those found in Appendix A.  Citations to the trial transcript, located in Appendices B and C, are cited as (T. at __).

complained that: counsel had not moved to have his bail reduced; counsel had made a poor performance at a hearing on a motion to disclose the identity of a confidential informant ("CI"); counsel had not called to talk about Petitioner's case and ideas; other inmates were outraged by counsel's negligence; and counsel just did not care about his clients (Ex. 1 at 26-27). In that letter, Petitioner stated that he could prove his innocence "with a decent lawyer, preferably a *pro bono* one." Id. at 27.

On September 25, 2007, Petitioner filed a *pro se* motion in the trial court in which he requested "to be co-counsel to my Public Defender Ronald Regnaert." (Ex. 1 at 30)

On January 2, 2008, Petitioner filed a "Motion to Dismiss Ineffective Counsel" in which he complained that counsel was not timely responding to his calls and requested that "all paperwork, findings, case notes, etc. held by the Public Defender's Office pertaining to this case be remanded to the defendant pursuant to this dismissal." (Ex. 1 at 33).

On February 25, 2008, Petitioner filed a motion to dismiss his counsel because counsel "has been continuing defendant's case for (15) months without consultation or approval from the defendant." (Ex. 1 at 45).

On February 29, 2008, Petitioner sent a letter to the trial judge stating that he had "submitted two (2) motions to dismiss and discharge my Public Defender, Ronald Regnaert and proceed *pro*

*se.*" (Ex. 1 at 48, 49).  This letter was, in fact, the first time Petitioner specifically and unequivocally mentioned a desire to proceed *pro se.*

On April 22, 2008, Petitioner sent a letter to the trial court, recognizing that he faced sixty years in prison if convicted as charged and beseeching:

> I beg this Hon. Court to appoint me a private
> independent counsel with trial experience,
> because I fear that the public defender's
> office and Ron Regnaert can no longer
> represent my defense properly and vigorously.

(Ex. 1 at 69).

On May 5, 2008, the trial court held a <u>Nelson</u>[3] hearing on Petitioner's complaints about his public defender (App. D). Petitioner explained to the court that counsel had continued his case without his permission, did not answers his phone calls or acknowledge the letters he wrote, did not want to call witnesses or develop evidence on his behalf, and did not file Petitioner's self-written motion to dismiss the charges. <u>Id.</u> at 11-12. Petitioner told the court that he had filed a grievance with the Florida Bar, but was told that he had to "take it up" with the trial court. <u>Id.</u> at 13.  The trial court explained to Petitioner

---

[3] Under <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973), when it appears to a trial judge that a defendant wishes to discharge his court appointed counsel, the judge should make an inquiry of the defendant as to the reason for the request to discharge.

that he faced 60 years in prison with a minimum mandatory sentence of 25 years in prison if convicted at trial. Id. at 13-14. Petitioner then complained that the amended information which charged him with trafficking in heroin was incorrect, noting that "[i]t's not true, it's prescription pain medication." Id. at 14. At that point, the trial court cautioned Petitioner that the hearing was recorded, and that his statement could be interpreted as a confession. Id.

Defense counsel told the court that discovery was complete, that the prior two continuances about which Petitioner complained were at the state's request, all witnesses had been deposed or subpoenaed and that he had done everything asked of him (App. D at 15). Counsel noted that "Mr. Sommers doesn't want to talk about reality. I have visited him at least ten times in the last year-and-a-half. And the State Bar found no problem with my representation of this gentleman." Id. Counsel stated that he was ready to go to trial. Id. at 16. The court denied Petitioner's motion to dismiss his counsel. Id. at 17. At that point, defense counsel suggested that the court hold a Farreta[4] hearing. Id. The trial court declined, but stated that "if [Petitioner] changes his mind at trial and wants to represent himself, we can still go

---

[4] In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that criminal defendants have a constitutional right to refuse counsel and represent themselves in state criminal proceedings.

forward I'll just advise him." Id.  Petitioner did not make a request for self-representation at trial.

At trial, evidence was produced showing that Petitioner had access to prescription narcotics (T. at 200, 211).  He was employed at a supermarket, and his supervisor, who was facing trafficking charges, agreed to assist the police as a CI so as to negotiate a better plea deal in her own criminal case. Id. at 210, 236.  The supervisor approached Petitioner and asked if he had pain pills. Id. at 199-200.  She told Petitioner that her sister was in need of the medication.  She was persistent in her attempts to get Petitioner to sell the pills to her sister, and Petitioner testified that he was afraid he could lose his job if he refused. Therefore, he finally agreed. Id. at 199-203.  On August 17, 2006, Petitioner sold thirty pain pills to an undercover officer posing as the supervisor's sister. Id. at 204-205.  Several months later, the same undercover officer contacted Petitioner and asked for more pain pills. Id. at 206.  On October 12, 2006, she purchased forty-eight pills from Petitioner. Id. at 206-210.  Petitioner's supervisor was not involved in the second transaction. Petitioner's defense at trial was entrapment on both counts.

After a jury trial, Petitioner was acquitted on count one and found guilty on count two (App. D at 103-104).  He was sentenced to a mandatory minimum term of twenty-five years in prison. Id. at 105.  Petitioner's sentence and conviction were *per curiam*

affirmed by Florida's Second District Court of Appeal ("DCA") on April 22, 2009 (Ex. 2 at 70).

On September 1, 2009, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised five claims of ineffective assistance of counsel, and one claim of cumulative error (App. 3A at 12). The post-conviction court denied each claim in the petition. Id. at 2. Florida's Second DCA *per curiam* affirmed (Ex. 4 at 58).

## II. Governing Legal Principles

### A. The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir.

2008).    Notably,  a  state  court's  violation  of  <u>state</u>  law  is  not sufficient  to  show  that  a  petitioner  is  in  custody  in  violation  of the  "Constitution  or  laws  or  treaties  of  the  United  States."  28 U.S.C. § 2254(a); <u>Wilson v. Corcoran</u>, 562 U.S. 1, 16 (2010).

"Clearly  established  federal  law"  consists  of  the  governing legal  principles,  rather  than  the  *dicta*,  set  forth  in  the  decisions of  the  United  States  Supreme  Court  at  the  time  the  state  court issued its decision. <u>White</u>, 134 S. Ct. at 1702; <u>Carey v. Musladin</u>, 549  U.S.  70,  74  (2006)  (citing  <u>Williams  v.  Taylor</u>,  529  U.S.  362, 412  (2000)).    That  said,  the  Supreme  Court  has  also  explained  that "the  lack  of  a  Supreme  Court  decision  on  nearly  identical  facts does  not  by  itself  mean  that  there  is  no  clearly  established federal  law,  since  'a  general  standard'  from  [the  Supreme  Court's] cases  can  supply  such  law."  <u>Marshall  v.  Rodgers</u>,  133  S.  Ct.  1446, 1449  (2013)  (quoting  <u>Yarborough  v.  Alvarado</u>,  541  U.S.  652,  664 (2004)).    State  courts  "must  reasonably  apply  the  rules  'squarely established'  by  [the  Supreme]  Court's  holdings  to  the  facts  of each  case.  <u>White</u>,  134  S.  Ct.  at  1706  (quoting  <u>Knowles  v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).

Even  if  there  is  clearly  established  federal  law  on  point, habeas  relief  is  only  appropriate  if  the  state  court  decision  was "contrary  to,  or  an  unreasonable  application  of,"  that  federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established  federal  law  if  the  state  court  either:  (1)  applied  a

rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

## B. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### III. **Analysis**

#### A.   **Claim One**

Petitioner asserts that the trial court violated his right of self-representation by failing to hold a Faretta hearing after he made an unequivocal request to proceed *pro se* (Doc. 1 at 5-8). He claims that he moved the trial court to dismiss his court-appointed defense counsel and that "[t]he request to proceed *pro se* was made unequivocally and in writing contained within a formal motion filed to the Trial Court." Id. at 5. Petitioner states that he repeated his "unequivocal" request to proceed *pro se* in a second "nearly identical" motion. Id. at 6. Petitioner raised this claim on direct appeal, and it was denied by Florida's Second DCA (Ex. 2 at 70).

The seminal Supreme Court decision on the issue of the right to self-representation is Faretta v. California, 422 U.S. 806 (1975), in which Faretta, a criminal defendant, "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Id. at 835. Although Faretta was not primarily concerned with a defendant's clarity and equivocation in making a request to proceed *pro se*, it is clear from the Supreme Court's decision that a trial court's obligation to conduct a Faretta hearing, at which a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's "clear and unequivocal" assertion of

a desire to represent himself. See Raulerson v. Wainwright, 469 U.S. 966, 969-70 (1984) (Marshall, J. dissenting from denial of certiorari) ("[I]n Faretta we indicated that a defendant's clear and unequivocal assertion of a desire to represent himself must be followed by a hearing, in which he is 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" (quoting Faretta, 422 U.S. at 835) (footnote omitted)); Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) ("In recognition of the thin line that a district court must traverse in evaluating demands to proceed pro se, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."); Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986) ("Insofar as the desire to proceed pro se is concerned, [a] petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed pro se] was not made.").

A review of the record shows that the trial court followed state procedure and conducted a Nelson hearing in response to Petitioner's complaints about counsel (App. D).   The court

reasonably found that Petitioner's complaints were unfounded or insufficient to justify discharge.  The court did not pursue the issue of self-representation.  However, the court's failure to conduct a _Faretta_ hearing was proper because Petitioner's request for self-representation was, at best, equivocal.

On June 7, 2007, Petitioner asked the trial court for a "decent" lawyer (Ex. 1 at 27).  On September 25, 2007, he asked to be appointed "co-counsel" to his attorney. On January 2, 2008, he asked that his attorney be dismissed and that his files be sent to him.  However, he did not specifically state that he wished to proceed _pro se_.  _Id._ at 33.  Petitioner repeated his request to dismiss counsel on February 25, 2008, but again made no express request to proceed _pro se_.  _Id._ at 45.  On February 29, Petitioner told the court, for the first (and only) time, that he wanted to proceed _pro se_.  _Id._ at 48.  On April 22, 2008, Petitioner asked the court to appoint him "a private independent counsel with trial experience."  _Id._ at 69.  Petitioner did not state at his _Nelson_ hearing that he wanted to represent himself, nor did he raise the issue at trial, even though the court expressly stated at the _Nelson_ hearing that he could do (App. D at 17).  Given Petitioner's vacillation on this issue, a reasonable person could conclude that the no unequivocal request to proceed _pro se_ was made to the trial court. _See_ _Dorman v. Wainwright_, 798 F.2d at 1366.

Even if Petitioner's February 29, 2008 letter was an unequivocal invocation of his right to proceed without counsel, Petitioner withdrew that invocation by subsequently asking the trial court to appoint him "a private independent counsel" on April 22, 2008. Petitioner did not, thereafter, renew his self-representation request; as a result, it was waived. See Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir. 1982) (en banc) ("Even if defendant requests to represent himself . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether."); McKaskle v. Wiggins, 465 U.S. 168, 182, (1984) ("A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense.").

The Florida appellate court's rejection of this claim was objectively reasonable under applicable AEDPA standards, and Petitioner is not entitled to federal habeas corpus relief on this claim. See 28 U.S.C. § 2254(d); Gill v. Mecusker, 633 F.3d 1272, 1296 (11th Cir. 2011)(holding that a petitioner not entitled to habeas corpus relief when record demonstrated that invocation of right to self-representation was equivocal and not sufficient to invoke Faretta).

**B.   Claim Two**

Petitioner asserts that the trial court violated his due process rights by refusing to allow counsel to present argument in support of his motion for a judgment of acquittal based on the defense of objective entrapment (Doc. 1 at 10).  In his brief on direct appeal, Petitioner claimed that the trial court allowed the defense to argue to the jury the defense of subjective entrapment, but denied its request to raise the objective entrapment defense because "[t]here [was] no evidence here at all to show that there was anything that the officers did that was improper." (Ex. 2 at 38-39).

Petitioner asserts that there was indeed evidence to support a judgment of acquittal based upon a due process violation (objective entrapment) (Ex. 2 at 39).  Specifically:

> The Appellant was pressured by Robin Brisson, his supervisor at his job, to sell pain medication to Brisson's sick "sister."  The Appellant offered to provide the pills for free, but Brisson insisted that her "sister" could pay for the pills.  Brisson was facing her own trafficking charge and was working with law enforcement In order to help herself. The lead officer even testified that the more deals Brisson arranged, the better her ultimate sentence would be.  The Appellant had no prior record and was unknown to law enforcement until Brisson contacted the police.  Brisson suggested the price for which the Appellant should sell the Vicodin to her "sister."  Brisson even threatened the Appellant that she would tell management about his bad back, thus putting his job in jeopardy, if he refused to help her out with

the pills.  Finally, Brisson offered to go to dinner with the Appellant he sold pills to her "sister."

(Ex. 2 at 41) (internal citations to the trial transcript omitted).

Petitioner has cited no clearly established law indicating that he had a constitutional right to an objective entrapment defense, and this Court's independent review of relevant United States Supreme Court cases suggests that under federal law, he had no such right.[5]

The Supreme Court first recognized an entrapment defense in Sorrells v. United States, 287 U.S. 435 (1932). In so doing, the Court resolved a split of authority as to whether the focus of the entrapment defense was "objective" (looking to the government's conduct), or "subjective" (looking to the defendant's predisposition).  The Court, siding squarely with the subjective theory, held that a "defendant [who] seeks acquittal by reason of entrapment[,] . . . cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue." Id. at 451.  Accordingly, the Supreme Court disavowed the defense of "objective entrapment," concluding that it was the

---

[5] To the extent Petitioner claims that the trial court erred under Florida law by not allowing defense counsel to argue objective entrapment, such an argument is not cognizable on federal habeas review.  Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991)("Questions of state law rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'")(quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).

defendant's predisposition, not law enforcement's conduct, which was at issue in an entrapment defense. Id. at 451.   Twenty-six years later, the Supreme Court reiterated that entrapment was the "line . . . between the trap for the unwary *innocent* and the trap for the unwary *criminal*." Sherman v. United States, 356 U.S. 369, 372 (1958) (emphasis added).

The Supreme Court rejected an invitation to revitalize an objective entrapment defense in United States v. Russell, 411 U.S. 423 (1973).   In this case, Russell urged that the defense of entrapment should be founded on constitutional principles rather than congressional intent.[6]   He argued that the government's involvement in creating his crime was so great "that a criminal prosecution for the [crime] violates the fundamental principles of due process," his predisposition to commit the crime notwithstanding. Russell, 411 U.S. at 430.   The Supreme Court disagreed that the objective entrapment defense had a constitutional foundation:

> [E]ntrapment is a relatively limited defense. It is rooted, not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law

---

[6] Russell reasoned that, just as with the exclusionary rule created in Weeks v. United States, 232 U.S. 383 (1914), and Mapp v. Ohio, 367 U.S. 643 (1961), dismissal was an appropriate means of deterring future police misconduct.   The Court rejected the defendant's analogy to Weeks and Mapp on the ground that, unlike the Fourth Amendment violations in those cases, "the Government's conduct here violated no independent constitutional right of the respondent." Russell, 411 U.S. at 430.

> enforcement,' but instead in the notion that
> Congress could not have intended criminal
> punishment for a defendant who has committed
> all the elements of a proscribed offense but
> was induced to commit them by the Government.

Id. at 435. The Supreme Court concluded that "the defense of entrapment . . . was not intended to given the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve." Russell, 411 U.S. at 435.

To this point, therefore, it was absolutely clear under Supreme Court precedent that a defendant who had a predisposition to commit a particular crime could not defend against prosecution on the basis that the government induced him to commit that crime, no matter how strong the inducement or "outrageous" the government's conduct. However, the Russell Court went on to note in dicta that:

> While we may someday be presented with a
> situation in which the conduct of law
> enforcement agents is so outrageous that due
> process principles would absolutely bar the
> government from invoking judicial processes to
> obtain a conviction, cf. Rochin v. California,
> 342 U.S. 165 [72 S. Ct. 205, 96 L. Ed. 183]
> (1952), the instant case is distinctly not of
> that breed. . . . The law enforcement conduct
> here stops far short of violating that
> 'fundamental fairness, shocking to the
> universal sense of justice,' mandated by the
> Due Process Clause of the Fifth Amendment.

Russell, 411 U.S. at 431-32 (J. Rehnquist). Three years after Russell, Justice Rehnquist, writing the plurality opinion, attempted to clarify Russell's "due process" statement by urging

that "[t]he limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant". Otherwise, "[i]f the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police[.]" Hampton v. United States, 425 U.S. 484, 490 (1976).[7]

This Court's inquiry on habeas review is constrained by the AEDPA, and in the circumstances here, the state court's decision to limit Petitioner's entrapment defense to that of subjective entrapment was not contrary to clearly established federal law. Petitioner cannot rely on Russell or the dissent's dicta in Hampton to support his assertion that the trial court violated his due process rights by not allowing him to present an "objective entrapment" defense. See White, 134 S. Ct at 1702 (limiting the AEDPA's concept of "clearly established law" to include only "the holdings, as opposed to the dicta[,]" of its decisions).[8]  This

_____

[7] Like his comment in Russell, Justice Rehnquist's comment in Hampton was dicta. Notably, in Hampton, five Justices, two in dicta and three in dissent, left open the "objective" defense door that was unlocked in Russell's dicta.

[8] Petitioner's reliance on Jacobson v. United States, 503 U.S. 540 (1992) is also unavailing.  The issue in Jacobson was whether, "[in]n their zeal to enforce the law[,]" government agents implanted the disposition to commit a criminal act into an innocent person's mind.  Accordingly, Jacobson involved an issue of subjective entrapment, focusing on whether the defendant had a predisposition to commit an offense. See Dial v. State, 799 So. 2d

conclusion is supported by the fact that neither the Supreme Court, nor the Eleventh Circuit, has ever found a violation of due process based on the government's outrageous conduct. See United States v. Jayyousi, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have discussed it only in dicta."); United States v. Ciszkowski, 492 F.3d 1264, 1272 (11th Cir. 2007) (Carnes, J., concurring) (describing the outrageous government conduct doctrine as rooted in "speculative dicta" and noting that we have never "reversed a conviction or vacated a sentence on th[is] basis").

Finally, the Court notes that the objectionable police conduct offered by Petitioner in this claim relates primarily to the August 17, 2006 drug transaction for which he was acquitted. To the extent that Petitioner urges that he was due an objective entrapment instruction on count two based upon police contact in count one, he has not overcome the trial court's factual finding that the police did nothing improper in count two.  Testimony was heard from two law enforcement officers that the CI was not involved in the second transaction and that it was arranged by a single telephone call from an undercover officer to Petitioner.

---

407, 410 (Fla. 4th DCA 2001) ("[T]he court's analysis in Jacobson is based on a subjective entrapment test[.]").  In the instant case, Petitioner was expressly allowed by the court to present a subjective entrapment defense.

See discussion _infra_ Part III(C)(6).   "Where the government is investigating offenses involving illegal drugs, it often must engage in undercover operations because it is very difficult to discover the contraband. This activity by the government does not generally constitute outrageous conduct." United States v. Lopez-Cruz, 170 F. App'x 634, 636 (11th Cir. 2006); United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998) ("The fact that government agents may supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct."). Furthermore, "[w]here the government merely presents a defendant with a routine criminal opportunity of which the defendant is more than willing to take advantage, the government's actions do not amount to outrageous conduct warranting dismissal." United States v. Rolon, 445 F. App'x 314, 322 (11th Cir. 2011).

Petitioner is not entitled to federal habeas relief on count two.

### C.   Claims Three and Four

In Claim Three, Petitioner asserts that trial counsel was ineffective for failing to:  (1) move to sever counts one and two; (2) move for dismissal based on entrapment; and (3) argue that the verdicts were inconsistent.   In Claim Four, Petitioner asserts that counsel was ineffective for failing to:  (4) strike a prejudicial juror; (5) object to the prosecutor's misstatement of the law during closing argument; and (6) move for a new trial based

on inconsistent verdicts and the prosecution's misstatement of the law during closing argument.   Petitioner also urges that counsel's multiple errors and mistakes resulted in cumulative error (Doc. 1 at 14-23).   Each claim will be addressed separately.

> **1.        *Counsel was not ineffective for failing to move to sever counts one and two***

Petitioner asserts that he was entitled to severance of counts one and two because they did not arise from one continuous sequence of events (Doc. 1 at 14).   He asserts that he suffered prejudice because "a fair determination of the Petitioner's entrapment defense to each count could not be properly weighed by the Jury. The Petitioner had a right to expect that his counsel would move to sever the charges, and had instructed him to do so." Id. at 15.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court, relying on state law, denied the claim:

> For "joinder to be appropriate, the crimes must be linked in a significant way.   The passage of time between the crimes does not, in and of itself, require severance." Domis v. State, 755 So. 2d 683, 685 (Fla. 4th DCA 1999) (internal citations omitted). The law requires that the crimes must be capable of being "considered in an episodic sense." Shermer v. State, 935 So. 2d 74, 76 (Fla. 4th DCA 2006). Crimes may be considered episodic if they occurred "during a crime 'spree' interrupted by no significant period of respite" or if one is "causally related to the other, even though there may have been a significant lapse of time." Id.   A criminal defendant is entitled to a severance of charges when two or more offenses are improperly charged in a single information, or upon a showing that severance

is necessary to achieve a fair determination of the defendant's innocence or guilt on each offense. Fotopoulos v. State, 608 So. 2d 784, 790 (Fla. 1992) (internal citations omitted)). "However, granting a severance is largely a matter within the trial court's discretion." Id. (citing Johnson v. State, 438 So. 2d 774, 778 (Fla. 1983)).

The record reflects in the instant case that the first sale involved Defendant, his supervisor, and the undercover officer. The second sale involved only Defendant and the undercover officer. Trial testimony reflects that prior to being given Defendant's name as a putative drug dealer by the supervisor, the police had no knowledge of any criminal activity by Defendant. Had the counts been severed, details of the first sale would have been needed to explain why the undercover officer called Defendant and how the second sale was set up. Defendant has failed to demonstrate any entitlement to post-conviction relief.

(App. 3A at 6-7)(citations to the record omitted). The post-conviction court's adjudication of this claim was *per curiam* affirmed by Florida's Second DCA (Ex. 4 at 58).

Petitioner's claim appears to be predicated upon his belief that, had count one been severed from count two, the jury would not have heard the details of his first drug sale to the undercover police officer. However, the post-conviction court specifically made findings that under state law: (1) Petitioner was not entitled to severance of the counts; and, (2) even if the counts had been severed, details of Petitioner's activity alleged in count one would have been admissible in count two. This Court is bound by

the state court's conclusions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Given that Petitioner was not entitled to severance of counts one and two under state law, counsel's performance was not deficient for failing to move for severance. Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).  Moreover, because the jury would have heard details of the drug transaction at issue in count one, even had the counts been severed, Petitioner cannot demonstrate prejudice from counsel's failure to move for severance.  This claim fails to satisfy either prong of Strickland and is denied pursuant to 28 U.S.C. § 2254(d).

### 2. Counsel was not ineffective for failing to move for dismissal of the charges based on entrapment

Petitioner asserts that under Florida law, a defense of entrapment entitled him to dismissal of the charges against him, and that "defense counsel was deficient for failing to file a Motion to Dismiss both pending charges on the basis of entrapment." (Doc. 1 at 15-16).

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court noted that trial counsel had moved for a judgment of acquittal on the basis of objective entrapment which was denied (App. 3C at 3).  The court also concluded that

entrapment had been Petitioner's sole defense at trial and was "litigated at every stage of the proceedings." Id.   The court concluded that, because "the record demonstrates that entrapment was the dominant theme at trial, Defendant fails to demonstrate how he could have been prejudiced by a failure to file a 'sworn motion to dismiss on the basis of subjective entrapment as a matter of law.'" Id.   The state court's denial of this claim was *per curiam* affirmed by Florida's Second DCA (Ex. 4 at 58).

To present an entrapment defense under Florida law, an accused has the burden of proving by a preponderance of the evidence that the government induced the offense for which he was charged. See State v. Howell, 629 So. 2d 213 (Fla. 2d DCA 1993).   Once that burden is met, the accused must then show the absence of a predisposition to commit the particular crime. Munoz v. State, 629 So. 2d 90, 94 (Fla. 1993).   Only when Petitioner has made that showing does the burden shift to the state to rebut the evidence of no proclivity to commit the crime and to establish that the accused was disposed to undertake the offense "prior to and independent of the government's inducement." Munez, 629 So. 2d at 101 (citing Jacobson v. United States, 503 U.S. 540 (1992)).

Generally, the issue of whether a defendant has been entrapped is reserved for the jury. See Fla. Stat. § 777.201(2)("A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct

occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact."). However, if the factual circumstances are not in dispute; the accused establishes that the government induced the accused to commit the charged offense; and the state is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue, "the trial judge has the authority to rule on the issue of predisposition as a matter of law because no factual 'question of predisposition' is at issue." Munoz, 629 So. 2d at 100.

In the instant case, the trial court was reluctant to allow Petitioner to put forth an entrapment defense on count two. The Court noted that Petitioner "had already sold drugs, he knew it was illegal, and then he did it again.  He had a predisposition to do it." (T. at 232).  After hearing argument from defense counsel, the trial court again noted that "[a]nd then we have, two months later, after the first deal, the undercover officer calls up, calls the defendant, she said he called her back, and she says – and he says that she called her [sic] again.  Either way, calling up someone to make a drug deal is not inducement[.]" Id. at 250. The court explained:

> If it happened the next day or a couple days later, but two months later.  There was no persuasion or threat or coercive tactics. This was the undercover agent.
>
> The CI Miss Brisson, she wasn't even involved in this second transaction at all.  All the

> sudden, two months later, he gets a call out
> of the blue – and he says, yeah, I've got more
> pills, and he accepted money for it.
>
> If you can show me a case which says that when
> an undercover agent calls up out of the blue,
> calls up and says, yeah, I want to buy some
> more drugs from you, and come on over, yeah,
> I'll sell you some more drugs, or I'll give
> you some more drugs.  Doesn't really matter
> whether he sold them or not, he gave them away.
> That's delivery.  That's just as illegal as
> sale under the statute.  That's a delivery.
> He admitted to the delivery, he admitted the
> sale, and he admitted he knew it was illegal.

Id. at 251.  Defense counsel disagreed with the trial court's conclusion, arguing that "the entrapment defense is a matter of fact. And Your Honor, even if the facts supporting the defense are, in the court's esteem, weak, the jury must be the one who decides whether or not the defendant was entrapped." Id. at 254. Upon consideration of defense counsel's argument, the court reluctantly allowed the defense to argue subjective entrapment to the jury. Id. at 257.

Given the trial court's clear statement to counsel that Petitioner was not induced to sell drugs in count two and its reluctance to even allow entrapment to be argued to the jury on this count, reasonable counsel could have concluded that moving for a judgment of acquittal as a matter of law on count two was futile.  Moreover, there were facts in dispute regarding Petitioner's willingness to participate in the second drug transaction, and the issue of entrapment was appropriately

presented to the jury. See discussion infra Part III(C)(6); Fla. Stat. § 777.201(2).

Counsel was not ineffective for failing to make a futile or meritless argument, and this claim fails to satisfy Strickland's performance prong.

### 3. Counsel was not ineffective for failing to seek a judgment of acquittal due to inconsistent verdicts

Petitioner asserts that defense counsel was ineffective for failing to argue that the two verdicts rendered in his case were inconsistent and that "a directed judgment of acquittal should have been sought based on his acquittal of Count One." (Doc. 1 at 16). Other than a passing reference to inconsistent verdicts in relation to cumulative error in his Rule 3.850 motion, Petitioner did not properly present this issue to the state courts. However, this Court need not consider whether Petitioner has exhausted this claim because it fails on the merits. 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

As a general rule, inconsistent jury verdicts are permitted in Florida. Eaton v. State, 438 So. 2d 822 (Fla. 1983). Inconsistent verdicts are allowed because "jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant." Brown v. State, 959 So. 2d 218,

220 (Fla. 2007).  There is an exception for verdicts which are "true inconsistent verdicts" where "an acquittal on one count negates a necessary element for conviction on another count." <u>Id.</u> at 220.

Petitioner's acquittal for selling drugs to the undercover agent on count one was not "truly" inconsistent with his conviction for similar behavior on count two.  The jury could have easily concluded that Robin Brisson's involvement in count one raised a reasonable doubt as to whether Petitioner was predisposed to commit the offense.  His acquittal on this ground did not necessarily negate his predisposition to sell drugs to an undercover agent two months later.  Petitioner is not entitled to relief on this claim.

### 4. *Counsel was not ineffective for failing to strike Juror Volton from the jury panel*

Petitioner asserts that counsel was ineffective for failing to strike Juror Volton from the jury panel (Doc. 1 at 19). Petitioner asserts that Juror Volton "openly admitted that she would have great difficulty accepting entrapment as a defense under any circumstances." <u>Id.</u>  Petitioner asserts that he suffered prejudice because this juror determined his "guilt or innocence through her filter of actual-bias." <u>Id.</u> at 20.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim on the ground that Petitioner had not demonstrated that a biased juror actually sat

on his jury (Ex. 3A at 7).   The post-conviction court's denial of
this claim was *per curiam* affirmed by Florida's Second District
Court of Appeal.   A review of the record supports the state court's
conclusion.

During *voir dire*, defense counsel Michael E. Mummert
("Mummert") questioned the prospective jurors on their views of
entrapment.   The following exchange occurred:

> MUMMERT:   Does anyone right now not believe in
> an entrapment defense?  Does anyone
> not believe that someone could be
> entrapped by the police into
> committing a crime?
>
> VOLTON:   I have a hard time with that.
>
> Q.   You have a hard time with that?
>
> A.   Right.  I think if somebody is going
> to do something right, it's up to
> them to make the decision, not the
> person who's trying to get them to
> do it.
>
> Q.   So if I were to present an
> entrapment defense, you wouldn't
> necessarily be receptive?
>
> A.   Not necessarily.
>
> Q.   Even if the judge read you the law?
>
> A.   It depends on how much evidence you
> have.  I mean, just to say that –
> it's like leaving your keys in the
> car.  Don't tempt the kid to go
> wrong.  I mean, the kid shouldn't
> steal the car if the keys are in it
> and its running.
>
> Q.   What if you tell the kid, hey, why
> don't you drive the car?

> A.        Then you're the one that is lying
>           about what he did.   You gave
>           permission. That's different.   I
>           don't see that as entrapment.
>
> Q.        So, are there any scenarios in which
>           you could imagine someone being
>           entrapped?
>
> A.        Not off the top of my head.

(T. at 81-82).   Volton was ultimately selected to serve on Petitioner's jury.

Reasonable counsel could have concluded that there was no grounds for a cause challenge to Volton and no reason to exercise a peremptory challenge. "Assessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." Bell v. United States, 351 F. App'x 357, 360 (11th Cir. 2009); Gardner v. Ozmint, 511 F.3d 420, 426 (4th Cir. 2007) ("On habeas review, federal courts generally accord 'particular deference' to the judgment of trial counsel during voir dire.") (citation omitted); DeLozier v. Sirmons, 531 F.3d 1306, 1323 (10th Cir. 2008) ("an attorney's actions during voir dire are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is so ill chosen that it permeates the entire trial with obvious unfairness") (citation omitted). Petitioner has failed to satisfy the first prong of the Strickland test on this issue.

Even assuming Petitioner could show that counsel's decision not to strike Volton from the jury panel was outside the range of professional competence, he has not demonstrated resulting prejudice.   To show prejudice from counsel's failure to use peremptory strikes, it is necessary to show that a juror did indeed harbor actual bias against Petitioner. See Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (a defendant's Sixth Amendment right to a fair and impartial jury is not violated unless the defendant can show that a member of the jury which heard his case was biased); Davis v. Woodford, 384 F.3d 628, 643 (9th Cir. 2004) ("Establishing Strickland prejudice in the context of juror selection requires a showing that, as a result of trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased.").   Volton did not state that she would not follow the law in Petitioner's case. Rather, she merely stated that she could not think of a scenario in which entrapment would apply.   When asked whether she could give Petitioner a fair trial, notwithstanding her nephew's arrest on drug charges, Volton replied, "Certainly." (T. at 54).   When asked by the defense what her verdict would be before trial she replied that she could not make a verdict without hearing the evidence (T. at 63). Having reviewed the voir dire transcript,

this Court concludes that Petitioner has not shown that Volton was biased.[9]

This issue fails to satisfy either prong of <u>Strickland</u> and is denied pursuant to 28 U.S.C. § 2254(d).

### 5.   *Counsel was not ineffective for failing to object to the prosecutor's closing argument*

Petitioner asserts that defense counsel was ineffective for failing to object to an alleged misstatement of the law by the prosecution during closing argument (Doc. 1 at 20-21). Specifically, Petitioner complains that the prosecutor told the jury as to count two, "he's predisposed to sell on October 11, 2006, because he already sold on August 17, 2006.  That's really the end of your analysis on Count 2."  In his Rule 3.850 Petitioner asserted that counsel should have objected to this statement and moved for a mistrial (App. 3A at 26).[10]

---

[9] It is worth noting that Petitioner was acquitted on count one which involved the August 17, 2006 drug transaction. Given that Petitioner admitted selling drugs to an undercover officer on this date, it is reasonable to conclude that Juror Volton accepted Petitioner's claim that he was entrapped to do so.  Accordingly, Petitioner's assertion that Volton would not follow the law as it relates to entrapment is not supported by the facts.

[10] Because a claim is exhausted only to the extent exhausted in state court, this Court will assume that the instant claim is the same as was raised in Petitioner's Rule 3.850 motion. <u>See</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]") (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)).

The post-conviction court denied relief on this claim, concluding that, "[e]ven if the statement had been in error," a single misstatement of the law would not have been sufficient under Florida law to justify a mistrial (App. 3A at 5). Respondent urges that it was entirely proper for the state to argue to the jury that evidence of the first sale was relevant to the question of entrapment on count two (Doc. 11 at 16-17). In reply, Petitioner cites Sherman v. United States, 356 U.S. 369 (1958), Jacobson v. United States, 503 U.S. 540 (1992), and Dial v. State, 799 So. 2d 407 (Fla. 4th DCA 2001) for the proposition that "predisposition is not evident when entrapment occurs." (Doc. 20 at 21).

None of the cases cited by Petitioner stand for the proposition that if a defendant can prove entrapment on his first offense, he is thereafter immunized from prosecution for subsequent offenses based upon his prior behavior. To the contrary, Florida law is well settled that evidence of prior criminal activity is relevant to predisposition. See Davis v. State, 804 So.2d 400 (Fla. 4th DCA 2001) (holding a critical element of entrapment is that the accused not have a predisposition to commit crimes, and one way for the state to prove a predisposition is to present evidence of prior criminal history); Biondo v. State, 533 So. 2d 910 (Fla. 2d DCA 1988)(evidence of prior drug sales relevant to rebut entrapment defense by showing

the defendant's predisposition to commit crime).   Therefore, even if the jury concluded that Petitioner had no predisposition to sell drugs on August 17, 2006, they were free to conclude that, after that date, he did have the predisposition to do so.

Given that Petitioner admitted selling drugs to an undercover agent on the August 17, 2006 and again on October 11, 2006, reasonable defense counsel could have decided against moving for a mistrial based upon the prosecutor's statement.   This claim fails to satisfy <u>Strickland</u>'s performance prong and is denied pursuant to 28 U.S.C. § 2254(d).

### 6.   *Counsel was not ineffective for failing to move for a new trial after the jury returned its verdict*

Petitioner asserts that defense counsel was ineffective for failing to move for a new trial after the jury returned its verdict (Doc. 1 at 21).   In his Rule 3.850 motion, Petitioner urged that his conviction on count two was contrary to the weight of the evidence because the second charge "came in the same course of conduct as the first and was the product of the original inducement." (App. 3A at 32).[11]   The post-conviction court denied this claim as follows:

> Defendant asserts that counsel was ineffective by not filing a motion for new trial. Specifically, Defendant claims that the verdict of guilty on the second count is

---

[11] This claim is exhausted only to the extent raised in the state courts.   Accordingly, any new claims or issues raised in the instant petition are dismissed as unexhausted.

contrary to the weight of the evidence. Defendant argues that had counsel filed a proper motion for new trial, the trial court would have found that "the second charge came in the same course of conduct as the first and was the product of the original inducement." Essentially, Defendant believes that because the jury found that Defendant was entrapped on the occasion of the first sale, there was no way that they could have found that he was not entrapped for the second sale.

The record reflects that Defendant's sole defense at trial was entrapment.  In order to claim entrapment, a criminal defendant must admit that he did actually commit the crime of which he is accused, but that he did so only as a result of someone else's persuasion or inducement.  It is up to the trier of fact to determine if the defendant was entrapped.  If the defendant is found to have been entrapped, he must be acquitted.   Conversely, as the defendant has already admitted to committing the crime, if the trier of fact does not find that the defendant was entrapped, he must be found guilty.   It is initially Defendant's burden to prove to the trier of fact by the greater weight of the evidence that a law enforcement officer or agent induced or encouraged him to commit the crime charged. The facts of the instant case have been recounted above, with the pertinent pages from the record photocopied and attached hereto. The jury listened to the testimony of the officers, the confidential informant, and Defendant himself.  They were provided with the jury instruction on entrapment.  As the two sales occurred on two separate occasions, months apart, and under different circumstances, the verdict of guilty on the second count is not contrary to the weight of the evidence.  Defendant has failed to demonstrate any entitlement to post-conviction relief.

(App. 3A at 6).   The post-conviction court's denial of this claim was *per curiam* affirmed by Florida's Second DCA (Ex. 4 at 58).

"In deciding a motion for new trial pursuant to Florida Rule of Criminal Procedure 3.600(b) [sic] on the ground that the verdict is contrary to the weight of the evidence, the trial court acts as a 'safety valve' by granting a new trial where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict." State v. Brockman, 827 So. 2d 299, 304 (Fla. 1st DCA 2002).   In the present case, the post-conviction court specifically determined that the guilty verdict on count two was not contrary to the weight of the evidence, and the denial was affirmed by Florida's Second DCA.   The post-conviction court, and by its affirmance, the Second DCA, already answered the question of what would have happened had defense counsel filed a motion for a new trial – it would have been denied.   See Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005). Consequently, Petitioner has failed to establish prejudice from counsel's failure to file a motion for a new trial.

Further, Petitioner has not demonstrated deficient performance.   Undercover police officer Patty Rodriguez ("Rodriguez") testified to the circumstances surrounding the second drug transaction (T. at 122-42).   She stated that after she made the August 17, 2006 purchase of pain medication from Petitioner, she asked him if she could buy more in the future (T.

at 141).  She told Petitioner that she needed such a large quantity because she sold the pills, and she needed a good price (T. at 141).  Petitioner gave her his telephone number (T. at 141). She called on October 10 and asked Petitioner whether he had more pain pills (T. at 122).  He told her that he had none at the moment, but could get some, and he called her back the next day (T. at 123, 134).  Petitioner told Rodriguez to come to his house to purchase sixty Vicodine pills for $6.50 apiece.  Id.  After Rodriguez arrived at Petitioner's home, they negotiated a price of $310 for forty-eight pills.  Id. at 126.  Rodriguez then testified:

> Before I left, I advised him – he asked me if
> I was interested in OxyContin.  They were
> gonna – he can get OxyContin for 80 milligrams
> at $40 apiece.  And he asked me if I was
> interested in it, and I told him – I told him,
> yes, that I was interested.  And then I asked
> him if he can get some heroin.  He told me
> that he was looking for heroin himself, and if
> I was – if I can find heroin, that maybe we
> can make a deal, we can do a trade.

(T. at 126-27).  The CI who had arranged the initial transaction between Petitioner and Rodriguez was not involved in the second transaction (T. at 140).

Evidence was presented at trial of Petitioner's predisposition to sell drugs at the second transaction. Petitioner returned Rodriguez' call and offered to obtain OxyContin for her.  Moreover, contrary to Petitioner's testimony, Rodriguez testified that she told Petitioner that she sold the

drugs for a profit. Based on the evidence of Petitioner's guilt presented at trial, reasonable trial counsel could have decided against filing a motion for a new trial. This claim fails to satisfy either Strickland prong and is denied pursuant to 28 U.S.C. § 2254(d).

### 7. *Petitioner is not entitled to habeas relief based on cumulative error*

Petitioner claims that the cumulative effect of trial counsel's errors deprived him of a fair trial (Doc. 1 at 22). This Court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit);

<u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial). Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. <u>Certificate of Appealability</u>[12]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[12] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u>  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   Each claim raised in the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Samuel Turk Sommers (Doc. 1) is **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   19th   day of May, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Samuel Turk Sommers
Counsel of Record